Case number 11-3814, CSWS, LLC v. Village of Bedford Park Good morning Your Honor, Wayne G. Apietro on behalf of the Planned Propellant, CSWS, LLC Good morning, Jane May on behalf of the Village of Bedford Park Good morning, Justice. This is William Otto, Assistant State's Attorney on behalf of the defendant at the lien, Edith Alvarez Amy Weather, Assistant Attorney General on behalf of the Attorney General And certainly we will allow the representatives of the State's Attorney and the Attorney General to present, but you do have sort of a limited issue here, whether that you were properly dismissed. And correct me if I'm wrong, but neither one is truly arguing any merits of this case. I don't necessarily need to argue against the defendants. I would however reserve maybe five minutes depending on what comes out in the opening statements from the Planned Parenthood. All right. So we'll give both sides, well, about 15 minutes and then we'll have a couple of minutes for the representatives of the Attorney General and the State's Attorney. All right. So with that, we'll let Mr. Apietro, did I say that right? The Village of Bedford Park and CSWS entered into an agreement in writing saying that CSWS had the right to open a business, an adult entertainment establishment. When CSWS applied for the proper permits and the ability to open a business, Bedford Park said, sorry, the State just changed the statute. You can't do this anymore. The circuit court held that since the contract between the parties said that CSWS had to abide by all laws of the State of Illinois, that was the end of the inquiry. Case is over. Statute says you can't do this because the State had amended the setback requirements or the distance requirements between adult businesses and other land uses from 1,000 feet to a mile. Is there any place in Bedford Park that you could open your entertainment? No, there's not any place in the county that CSWS could open that kind of business. It's a total zone out. And that's one of the constitutional challenges we made to the statute that the statute, in addition to not having any basis to it as it must in terms of studies to show that these businesses cause that kind of secondary effects that requires such an extraordinary distance requirement, it doesn't leave any place for any business, whether it's CSWS, to do any adult business, not just a gentleman's club, anything, a bookstore, any kind of quote adult business, unquote. It's got to be a mile from a plethora of other land uses. There is no place in the county that that can occur under this new statute. Can you make it in Wisconsin? I don't know about Wisconsin, Your Honor. I haven't checked to see what their statute is. Didn't you purchase the specific property, though? CSWS owns the property. Yeah, so I mean, I don't know that, though. So the property that had already been purchased, true? Right. Yeah, would not fit into the language of the statute. Well, at the time they purchased it, it was legal. Yes, it would have. Yes, I understand. And the circuit court said, well, the fact that there's this statute there, that's the end of the question. No further questions. Well, it said that the village didn't have to comply with the contract because the ordinance prohibited them from doing so. Right, but that's just the beginning of the inquiry, Your Honor. It's not the end. Due process requires that when a governmental entity, such as Bedford Park, takes away property rights, you've got to have due process. And here, that process is not just a formality. There are a number of issues regarding whether this statute, in fact, should apply to CSWS. Number one, the statute by itself, on its terms, the amendment to the statute by itself, on its terms, says this only applies to new businesses. There is no decision as to, since CSWS had the right to build the business, even though it had not actually begun operations, was it a new business? Our position is it is not. The circuit court didn't even talk about that. Well, how would you define new? A new one that doesn't have any right to operate. Something brand new that had never been, at least in the process. But you do argue that that was never even considered, whether this statute applies. Right. Number two, the village is stopped from applying this statute to this particular entity because they entered into the agreement, and based on that agreement, CSWS spent a million dollars trying to get ready for this business. Okay, but you haven't had any permits yet. You hadn't started construction, had you? They had not started construction. So where did the million go? I take that back. They had started rehabbing the building from what was there before. They had not started the new buildup, but they had, in fact, started doing work on the property. Okay, and how much, and you said they spent a million on rehab? Well, we didn't get to the point of actually introducing evidence, but it is alleged in the complaint that it's a million dollars. Give us some ballpark information here. What did the property cost? I can't remember the purchase price of the property. I'm not sure it's in the record. I don't think it is, because we never had an evidentiary hearing about any of these issues. So in the complaint, I'm pretty sure it does not allege what the purchase price of the property is. All right. Number three, if the statute does apply, it's unconstitutional as applied to Bedford Park because it's an impairment of contract. It takes away existing property rights. CSWS had the right to operate this business in that location, and the application of this statute to this business impairs those property rights without any kind of compensation. So it's unconstitutional to apply this statute to this entity because it's an impairment of contract, both under the state constitution and the U.S. Constitution. Number three, the statute itself is unconstitutional on its face. It's overbroad. It does not differentiate between different kinds of adult businesses, and the cases are legion that when you have a statute that regulates a business, you've got to talk about the particular business involved, whether it's a bookstore, whether it's a nightclub, whether it's a peep show operation, or whatever. This statute does not do that. Number two, when the legislature amended the statute to make it a one-mile buffer zone, there was no evidence whatsoever introduced that would show that that kind of a requirement is necessary. When you're dealing with First Amendment rights, it is clear that there must be some evidence to show that this kind of regulation, number one, is necessary to overcome adverse secondary effects, and number two, that the regulation that is being enacted is only enough to ameliorate those specific secondary effects. There's no evidence of any of that here whatsoever. There's no showing of any substantial governmental interest. As we talked about before, it's an absolute zone-out. It leaves no place within the county for an adult business of any kind to operate. The trial court found it unnecessary even to reach the constitutional issues you're raising. You know, they're saying they had the first level of restriction on your business is the local ordinances, and it seems that you reached an agreement with them, and the village basically says, okay, we'll waive our ordinances as long as we don't offend the state. And you guys agreed to it. You said, okay, well, village, waive your restriction as long as the state has no objection. But now the state did pose an objection, so it does not put you in a position where you have to follow that. No, not when the state law is invalid, Your Honor. It's void. That statute is unconstitutional and void for the reasons I just said. Number one, it's unconstitutional on its face. Number two, it's unconstitutional as applied to this entity. Well, any other business person except your client, if they wanted to now open the same type of business, they would not get this special waiver of variance that your client got. Yeah, but they have the right to attack the statute as unconstitutional on its face because it's unconstitutional as applied to everybody. Well, not even if they can't get past the variance that was waived in the case of your client. I'm not sure I understand the question, Your Honor. The statute itself cannot be applied to anybody. The amendment to the statute itself is void on its face as unconstitutional. It cannot be applied to anybody. New, old, or whatever. But a person now who wants to apply, and if their land was in conflict with the local ordinance, they wouldn't even get to the constitutional part of it because they couldn't probably get past the local ordinance, which your client had to sue in the first place to get a waiver for. I'm not sure I understand, Your Honor, because I don't know what local ordinance there is that would be applicable to some other business. So I don't understand the question. Well, did your client have to initially get a variance to get the business? That's why the whole agreement was written in the first place? Well, once they learned, once Bedford Park learned that CSWS wanted to put up this kind of a business on the property that it only went and passed all kinds of new ordinances, we attacked those ordinances in litigation in the federal court. The contract that was signed was a settlement of those issues in that case. There was never a decision as to whether those local ordinances were valid or not. Depending on what they are, they may not be valid as to anyone. Putting aside your clients and their agreement that they entered into with the village, is it your position that an ordinance that would say that there can't be such an establishment within one mile of certain sites is just unconstitutional? Well, it is unless somebody comes up with some evidence to support that kind of a distance requirement. Yeah, but haven't there been multiple studies that have already shown the, I'm thinking, I'm trying to get the word, yeah, of having this establishment, crime and other factors. I mean, there's numerous studies. So they've put a maybe outer perimeter on the distance, but does that, are you saying that alone is what makes this unconstitutional? The statute before it was amended said there had to be a thousand feet difference. Yes, yes, yes. That was held to be valid. So a thousand foot distance requirement was valid. There is nothing that supports extending that distance requirement to a mile. Did the studies even talk about the distance? Sure. You're saying that they've drawn the line at 5,280 feet. Well, now, the ordinance doesn't say that. See, there aren't any studies out there that would suggest that, you know, these effects suddenly drop off or stop at a mile. There is no such thing anywhere. And there certainly is no case anywhere that upholds a one-mile distance requirement. To my knowledge, the largest setback or distance requirement that's been approved is a thousand feet. And most of the studies don't say that. Right. They talk about the distance. Right. Oh, absolutely, Your Honor. All right. Absolutely. You have other arguments as far as the statute's constitutionality. Well, those are the arguments as to the constitutionality, and the only other thing I haven't mentioned is it's special legislation because it only applies to two counties in the state, Cook and DuPage County. It doesn't apply to any place else in the state. None of those issues were considered by the trial court. It is necessary for those issues to be determined. There have been multiple types of legislation, though, that have permitted certain things in some counties and not others. I mean, that alone is not going to make this special. Well, but that's not ever been addressed, Your Honor, and that's my point. There isn't even any discussion or decision about that issue. Well, that's because the court didn't get to the constitutionality of this statute. Right. And it has to. Under these circumstances where the statute itself is being attacked, the court must reach those issues. Do you want to talk about the attorney general and the state's attorney and why the court improperly dismissed them? At least that's your position. The criteria for standing, both of them argue there's no standing to attack them because they say they haven't attempted to enforce the statute against either CSWS or apparently anybody else. The criteria for standing are that the plaintiff must sustain or be in imminent danger of an injury. Clearly that's here because CSWS has its property taken away. It has and is sustaining an injury. Not one, though, that the AG's office or the state's attorney's office has in any way suggested they're going to be involved in. Your position is basically any time any litigant claims a statute is unconstitutional that the state's attorney and the attorney general have to appear and defend it. That's really your position. When there is a statute that they are required to enforce and there is a likelihood that they could enforce it, absolutely, Your Honor. That's exactly what the Seventh Circuit just held at ACLU versus Adler. That statute is a completely different statute. I don't know how you can compare this one with the eavesdropping. It has to do with standing, Your Honor. This plaintiff is having its First Amendment rights taken away just as was alleged. This is not a criminal statute. No, it's not a criminal statute. It's a civil statute, and it suggests that they, what, may enforce actions to Bedford Park says they're going to. Well, Bedford Park is a completely different party. No, no. We're not talking about whether the village should be here. We're talking about whether the attorney general of the state of Illinois and the Cook County State's attorney should be here to defend this statute. Of course, and that's exactly what the case is saying. In these circumstances where the plaintiff is being harmed by the existence of the statute and there is the potential that the state or the county can enforce that statute against it, they have standing. But you're supposed to notify that you're challenging the constitutionality. You're not supposed to name them. You're not supposed to name the attorneys. The Supreme Court rule says whenever you allege that a statute is unconstitutional, you have to notify. Notify. Right. Just send a letter. Well, we did that. Right, but you don't have to name them. Well, when you're seeking where the village of Bedford Park says, we cannot be charged with defending this statute because it's not our statute. The only way you can get a decision as to whether the statute is constitutional or not is by naming the attorney general and the state's attorney, and that's what the Constitution of Illinois says. They are there to stand in the place of the state to have those issues decided. You can't do, as the circuit court in this case said, the village of Bedford Park can't speak to the statute because it's not its statute. But you can't attack the statute by bringing in the state and the county because they don't want to be heard of it. You can't do that, Your Honor, because if you do that, you deprive this plaintiff of due process, the right to get a decision as to whether the statute that's being applied to it is constitutional or not. Yes, but you can do that without the attorney general and the state's attorney. You can do it with the village of Bedford Park. Well, Your Honor, if you rule that way and tell the circuit court that, I am more than pleased to have that ruling because that's exactly what Bedford Park says is not the case. I wanted you to address specifically, and you have, why you believe that the state's attorney and the attorney general should be here. Right. I mean, if Bedford Park has to defend the statute and has to speak to whether it's valid or not, then perhaps the attorney general and the state's attorney are necessary parties. But if you hold, as the trial court here did, that Bedford Park is not responsible for saying anything about the validity of the statute, then you do have to have the state and county here. Otherwise, the issue cannot be decided. And you can't have no one responsible for speaking to the validity of the statute. Can't the circuit court just say, Bedford Park, enter your permits and say nothing about the statute. Sure. So you don't need the attorney general or the state's attorney. It depends. If you win that way. If we win that way. As long as we get the relief to which we're entitled. As long as you open up, you don't care. That's right. And as long as we have someone against whom to get the issue decided. And the only reason we brought in the state and the county is because the court said, well, you know, Bedford Park can't speak to that issue and we're not going to even talk about it. I still say that the Constitution requires the attorney general to speak when the statute is being applied, as it is here. Don't you have to have an allegation, though, that they intend to enforce or threaten to enforce? No. No? No. The cases say that. What does that Supreme Court case of Holland v. Scott say? It says when the statute is there and the potential is there for the state and or the county to enforce it, then you have standing. When it's, in fact, being applied to you, as it is here. And don't you allege exactly the opposite in your complaint? Neither the attorney general of the state of Illinois nor the state's attorney has or will take any action to enforce the statute. Don't you make that specific allegation? No. In your complaint, don't you say that? I didn't think it said that, Your Honor. Well, it's in the record at 168, the common law. I'm sorry? I believe it's at the common law, page 1168. Okay. I'm certainly not going to contradict you, Your Honor, if you're reading it. I'm taking it from the brief. Okay. Well, our position is that somebody must be there in order to have a decision as to the validity of the statute. And as I say, if the village has to defend it, that's fine with me, Judge. All right. I just need somebody to be there so we can get a decision. Anything further at this point? No, Your Honor. We'll certainly allow you some rebuttal. All right. Thank you, Your Honor. Thank you. Ms. May? May it please the Court? I think it's important to look at the timeline of what happened here. October of 2006 is when Bedford-Carp and Plaintiff entered into the settlement agreement. Roughly February of the next year, 2007, is when the law is introduced in the legislature, or the bill is introduced in the legislature. It goes into effect the following August. So we've got from roughly October 2006 to August 2007, and literally nothing has happened with this property. Of course, the settlement agreement gave them the right, but that right was subject to state law and any amendments thereto. And lo and behold, the amendment happens and prohibits them from locating. Well, let's start right there. It prohibits them. Now, how can you possibly say that new means previously granted variance and agreement with the village to operate, but this suddenly means that they're, why are they new? And how can that be determined at this point? They're new because they've never operated. They have the right under the settlement agreement subject to state law, but there's never been a club there. Well, when they had the right under that contract, that was what they had at that particular time. So, I mean, how did that suddenly go away? And how can you say that this new doesn't mean someone that's attempting to get a permit to operate as opposed to someone that's entered into a settlement agreement in federal court with the village to operate this very establishment? I mean, I think you just have to look at the words of the statute. It says a new adult entertainment facility. There's never been an adult entertainment facility there, and there weren't any substantial steps taken by a plaintiff from the time that they signed that settlement agreement until almost a year later when the law goes into effect to make it an adult entertainment facility. And from the property right perspective or the vested right perspective, which sort of dovetails with equitable estoppel, what the plaintiff has to show is that there was substantial reasonable reliance on the terms of that settlement agreement and that they took steps. Well, do they have to show that on the motion, or do they get a chance to establish that in a trial? They had the chance. They filed for summary judgment and presumably put forth their best evidence on all of their issues at that point. So let's talk about the claim of estoppel. How could that be decided at the motion for summary judgment? Didn't they have an agreement with the village to be able to open up this establishment? They had an agreement subject to state law and any amendments thereto, but that's not the end of the inquiry. Well, when they entered into this agreement, did they have an agreement to be able to open? Oh, yes. And then is it the next element of the estoppel that they relied upon this agreement to their detriment? Yes, and that's where their argument fails, because they haven't pled nor did they show on summary judgment substantial reasonable reliance. Their summary judgment was the time that they could have presented affidavits of the expenditures. Isn't the complaint alleged that based upon the agreement they had with the They alleged that in conclusory terms, but they didn't allege, we spent $1 million from October 2006 until the bill went on the books in February 2007. They haven't pled any facts or presented any evidence. Where is this million-dollar thing coming from? Is that coming from the complaint and the count involving estoppel or not? It comes from the complaint. However, it is not qualified, and I believe that if you look at, I think it's in count three where they say what the million dollars involves, it involves the mortgage on their property, their property taxes and their insurance, all of which are expenses they would have incurred when they bought the property regardless of whether they ever entered into a settlement agreement with Bedford Park to allow them to open an adult entertainment facility. So those expenditures are not necessarily expenditures made. No, but there's a word you just used, not necessarily. Are we talking about questions of fact for summary judgment purposes or not? Well, it could be a question of fact, but it was plaintiff's obligation on their summary judgment motion to present evidence supporting those facts, which they never did. It's not in the record anywhere. They had that opportunity on the second amended complaint to put forth their best evidence. And, in fact, Judge Hall asked us, is there any question of fact here that you think I need to be concerned about, and I think both parties told her no because we were both satisfied with the record on summary judgment. So the estoppel was out via the summary judgment. You're saying that the counsel agreed there were no questions of material fact as far as the count involving estoppel. And really, you know, I have to back up. Are you going to answer or no? I'm sorry. I asked you if you're suggesting that counsel agreed there were no questions of fact as far as the count involving estoppel. Right, and I think that's true, but I think your question presumes that there is a count regarding estoppel and there's not. All right. If you look at the original complaint and there were three amendments. Well, what about the second amendment? It's not in any of the complaints. All right. Well, so you're saying that the estoppel was never even pled. It wasn't pled. However, we did argue it on the summary judgment, and my point is that was their time to put forth any sort of evidence they had. Why was anyone arguing a count that hadn't even been pled? I objected to it. All right. But in the alternative, I responded to it. Yes. All right. Does this sort of preserve our rights? Yes, I understand now. All right. So first argument, property right simply doesn't exist solely because there was the settlement agreement. You've got to look at what expenditures were made in reliance on that settlement agreement, and we don't have evidence of those expenditures. The agreement you entered, it said that they had complied with all the state statutes. Isn't it implicit in that agreement that there must be compliance with valid state statutes and that if there's an allegation that the statute is not valid at some point, if you're going to enforce that agreement in that way, someone has to determine whether or not the statute is valid. And I think that's your impairment of contract cause of action, and the proper defendant to an impairment of contract cause of action is the party that enacted the law that impairs those contractual rights. That is not that party. Well, that party may not even be aware of your agreement. That's true. So if you're relying on that statute and someone says, well, that's invalid, at some point don't you have to allow them to challenge the validity of the statute and let the circuit court the proper place to do that? I think that it would be the proper place to do it, but we're not the proper defendant. Who is the proper defendant? The state. It's the state's law. And if you look at the Horowitz case, they lay out an almost on point example. The village is the entity that is refusing to permit them to function. So I don't know how you can say that they haven't sued the proper party. It's the village that wishes to enforce this. I don't think there's any question that it is the village that wants to enforce this ordinance against CSWS. There's a difference between, I think, compliance and enforcement. Bedford Park does not have the right to presume a state law is unconstitutional. We cite the city of Elgin case in our brief that talks about that. And we have to presume it's constitutional and follow it. But don't you also have to show or at least give them an opportunity for a hearing to establish that this actually applies to them? They have an argument that it states that any new establishment can't be within a mile. So where are they going to have the forum to litigate this? The village is suggesting that new apparently means them. But there's been no hearing. No one's ever decided whether this statute actually applies to them. And actually the village has made that determination without a hearing. One point on the new argument, the first time that was raised, and we've been litigating this case probably five or six years, was in the plaintiff's reply brief in this court. So my first argument would be they waived that argument. It was never briefed below. It was never even brought up below. It's not in any of the pleadings. So it's improper for him to raise it at this point. And you don't believe it's in the opening brief? No, I don't. And to respond substantively, Bedford Park doesn't have the right to decide whether a law is constitutional. It doesn't have the right to amend the law. I think a rational reading of the statute is that it would apply to plaintiff's business because it's never opened. There never has been a business. There's a company that owns the property, but that's not the same thing as a club operating on those premises. Those are two distinct things. So I think a rational reading of the statute could lead to no result other than this would be a new adult entertainment business. So Bedford Park gave them the permits and said, do what you like because we're not going to enforce it. You're not going to be liable in any way. It's the state that comes after the plaintiff. But I don't necessarily think that's a lawful position because we have to presume the law is constitutional. And there's a case out there that says you don't have the right to presume it's unconstitutional and act in contravention of it. The state law says that Bedford Park can't enact any ordinances that contravene public policy of the state. We have to presume that this law is the public policy of the state of Illinois. So for us to ignore it and pretend it doesn't exist and say plaintiff, you can operate is a slip in the snow. You're just buying by your contract, though, your agreement. We said we'll give you a permit. Here's your permit. Good luck. But by us issuing a permit that violates state law that says go ahead and violate state law I think contravenes the public policy of the state of Illinois. But then the state comes in and enforces it. Who you said should enforce it. And what's to say they won't enforce it as to Bedford Park? So I think our client has taken the position that it must in this case, which is we have to follow the law. So who's enforcing this particular law against CSWS? I don't think it's necessarily enforcement. It's compliance. Bedford Park is complying with the law. We haven't shut down CSWS. You're not allowing them to open. We're not giving them a permit to open. So aren't you enforcing this law against them? You're saying that this law prohibits us from giving you any further permit to operate. I mean, I guess it's a matter of semantics. And so should they not at least have some sort of a hearing where someone has to establish that this piece of legislation, in fact, applies to CSWS? Well, one, the argument was never made below. It never made to Bedford Park until this reply brief. So if they wanted that opportunity, they should have asked us for it five years ago. They went into the circuit court and asked to enforce a contract that they believe they have with the village of Bedford Park. I mean, where is this going to be litigated? Nowhere? I just don't understand the village's position that they're not enforcing anything. Well, you know, the case that I started to cite to was Horowitz v. Matthews, which lays out a very on-point example of a situation where the city of Chicago enters into a settlement agreement with respect to certain activity, which is then prohibited by a state law. And in that case, the Horowitz court talks about that being an impairment of contract right, which would put the city of Chicago off the hook because they are simply complying with the state law. Plaintiff's cause of action then becomes a cause of action for impairment of contract, which lies against the state of Illinois, which is the entity that that's the situation we have here. Bedford Park's been stuck in this catch-22 for five years, and we've done what we thought we must do under state law. But plaintiff is not without a remedy here. So did the circuit court actually determine that this law prohibited them from opening, or did the circuit court merely say that the state created this contract, or that the contract is not being impaired by the village, it's being impaired by the state? I think it's the last thing you said. The circuit court relied on the Horowitz case, which lays out what the appropriate cause of action here is, and it's a constitutional cause of action for impairment of contract. Doesn't the court, in order to get to that, though, have to conclude certain things? Doesn't the circuit court have to decide that this ordinance, in fact, applies? In other words, it has to say that this is a new establishment, therefore, it does not get to operate. Doesn't the court have to make certain findings beforehand as opposed to simply saying that the state is, that at the end of the day, it's the state legislation that's prohibiting any activity, and not it has nothing to do with the village of Bedford Park? The court didn't have to make that determination because the issue of whether this was a new establishment or not was not an issue that the plaintiff raised. It was essentially conceded because it wasn't in the pleadings, it wasn't argued, and it was assumed, as I think rightfully by the circuit court, that the plaintiff was conceding the point, that it did apply to them. Turning to the constitutionality issues, it was the plaintiff's burden on their summary judgment motion as to the second amended complaint to show that the state law was unconstitutional, and they didn't make that showing. When there's a statute like this that applies to adult entertainment facilities, certainly if the statute's aim is at the secondary effects, the negative secondary effects that come from that type of operation, then the inquiry becomes whether there's reasonable alternative avenues of communication. Plaintiff made the statement that this law applies to the whole county. It doesn't. It applies to suburban Cook County. It does not apply to the city of Chicago. And I've asked in my brief that the court take judicial notice of the fact that Bedford Park abuts the city of Chicago. In fact, half of our northern border and our entire eastern border lies up against the city. So when one looks at the analysis of whether the plaintiff has reasonable alternative avenues of communication, you look at the market area and where are they drawing their clients from, and is the city of Chicago part of their market area? And I think in this case you'd have to find it is. And this law doesn't even apply in the city of Chicago. So I think the conclusion has to be that they would certainly have reasonable opportunities to operate in the city of Chicago. With any of the studies that have been mentioned, do any of them talk about the line of demarcation? In other words, is there some study out there that says you need to be at a mile away so that you don't have these secondary effects? When we have all these other pieces of legislation that have traditionally used 1,000 feet. I'm not aware of any study that says. So then what is the basis for this? I mean, I thought you were relying on studies that show that, you know, within 1,000 feet you're going to have significant secondary effects. But if there's no study out there that says, okay, you have to be a mile away, then what is this based on? What is the reasonableness of this line of demarcation that is pushing it out to a mile? The studies have to show that there are secondary effects generated by those businesses, which unquestionably they do. It's a strip club that's been documented even in Supreme Court cases that they generate higher crime, prostitution, spread of disease, et cetera. Yeah, that I understand. But then the next inquiry becomes, does the plaintiff have a reasonable alternative avenue of communication? And then that's where you look at, okay, where do they propose to operate? Here they propose to operate in Bedford Park, very close to the city of Chicago border. And if you spread a radius out from that location, do they have reasonable alternative opportunities to open a strip club somewhere else that wouldn't be subject to this rule? And they do. They have that right in the city of Chicago. Does it matter, though, that in this particular case there was already a prior agreement? And, I mean, this isn't where they're asking to operate. This is where they had this agreement that at the time allowed them to do so because they were within, they were outside the 1,000, but they weren't as far away as a mile. I mean, isn't this a little bit factually different because they already had a contract with the village to be able to open up? Well, I think there's sort of two separate analysis. One goes to whether the law itself is unconstitutional, and the other analysis is whether they have any rights under the agreement separate and apart from that. So I don't think necessarily that they get better treatment under the constitutionality issue just because they had a contract in place that predated the law. I think the two arguments are separate. The plaintiff also makes the argument that the statute is overbroad based on the fact that it applies to three different types of businesses, adult entertainment facilities, pornographic theaters, and adult book and video stores. That argument, I think, goes nowhere because each of those types of businesses, studies have shown, generate negative secondary effects, whether you're a strip club or a bookstore that is selling adult material. So I think that argument is meritless. The other is the special legislation claim. He's arguing that because it applies only in suburban Cook County and DuPage, that it is somehow special legislation. To get past the first hurdle of special legislation, plaintiff has to show that the conditions that exist in suburban Cook and DuPage are substantially similar to the conditions that exist in any other county in the state or any other area in the state where they feel the statute should be enforced. And they haven't even put anything in their complaint to show substantial similarity, let alone brought forth evidence on their summary judgment motion that would demonstrate that. So they haven't made the first hurdle with respect to the special legislation claim. And finally, plaintiff argues that just generally under the constitution, they're left without a remedy. My response to that would be they have a remedy. It's set forth in the Horowitz case. It's an impairment of contract claim. And the proper defendant to that claim is the entity that passed the law in this case, which is the state. Thank you. Morning, Your Honors. Good morning. The Attorney General believes that she was correctly dismissed from this case because there was no claim for declaratory or injunctive relief applied against her. At the outset, I want to point out that in the reply brief at page 9, CSWS cites to the section of the county's code and not the municipal code to claim that there's enforcement power here by the Attorney General and the state's attorney. But as we discussed on page 24 of our brief, those provisions are different. Under the county's code, the Attorney General and state's attorney are given enforcement power, but not under the municipal code. And that makes sense here because the municipality can enforce the law within its corporate boundaries. So I just wanted to clear that up. So under the statute at issue here, Section 11-5-1.5, neither the Attorney General nor state's attorney has the enforcement power, nor did they enforce or threaten to enforce the statute against CSWS. And therefore, the Attorney General was not the proper defendant for the claim that was actually brought against the Attorney General in this case, which was that the statute was unconstitutional. Unless the court has other questions. We ask that you at least affirm the judgment as to dismiss the Attorney General from this case. Thank you. Rado? Very briefly. I concur with the position of the Attorney General with respect to the enforcement provisions. As you read the two enforcement provisions that are mentioned as statutes involved in Plaintiff's Brief, 65 ILCS, the municipal code, is the one that's at issue with respect to this proceeding. The very first line of that says it is prohibited within the municipality to locate an adult entertainment facility. And then it goes on to describe the various distances. If you look at the provision in terms of the county's code, which is found at 55 ILCS 5-5-1097-5, that provision only applies to parcels in unincorporated county. So there's a distinction made by the state legislature as to whether or not or when the state's attorney in AG has the ability to go into and enforce a provision with respect to the adult use ordinance. When it comes to municipalities, we don't have the authority. When it comes to the unincorporated portions of the county, that authority is given to us. So I don't think that the enforcement provisions relied on by the plaintiff are even applicable in this case. Plaintiff's counsel had indicated with respect to the standing issue, Justice McBride, you asked questions about doesn't there have to be an allegation that there is going to be an enforcement brought, some type of enforcement proceeding brought against the plaintiff. And I submit to you that there is. In fact, the principal case that they rely on in their brief, which is the ACLU case versus Alvarez, at page 594 of that case, the court said that as a threshold, there has to be some credible threat of prosecution. And you were, you picked up very well when you referred to paragraph, or two, of their corrected third amendment complaint, where they, in fact, assert that neither the state's attorney nor the AG has ever threatened to prosecute nor intends to prosecute. So in light of these allegations, there is absolutely no standing with respect to the AG and the state's attorney in this case. I point out also, very briefly, pages 26 and 27 of the plaintiff's opening brief, essentially their only contentions with respect to the state's attorney are that we have a duty to defend the constitution of the state statute. This is an issue that's been brought up before Judge Manning in the federal district court back in 2008, in which she entered a judgment we contend on its merits. It addressed each and every one of the three claims the plaintiff has made, and she, without any words, she has found that they have no merit whatsoever. The three provisions they cite are enumerated duties found in the county code that apply to the state's attorney. Not one of those three duties, both Judge Manning and Judge Hall found impose any duty upon the state's attorney to defend the constitution of the state statute. That's that issue. For these reasons, we believe the trial court probably dismissed the state's attorney from this cause, and we ask that that decision be affirmed. As to whatever Judge Manning ruled in the federal court, that was a different complaint. All she ruled was a dismissal of that complaint. David even made a copy of that complaint a part of the record. So we have no idea what it was that Judge Manning was talking about, and in order to have res judicata, you have to have a decision on the merits. Dismissal of a complaint for failure to set a claim is certainly not a decision on the merits and can't be claimed to be. The Illinois Constitution says there must be a remedy for every wrong. That means that everybody has a right to be heard in court and have a decision made as to their rights. That's all we're asking for in this case is that CSWS have a right to have a hearing to determine the constitutional attacks we have made upon this statute. As I said before, I don't particularly care who it is that has to defend the statute. We have to have an opportunity and a right to have our arguments heard, and if that statute is found unconstitutional, as we believe it must be, that we are entitled to a declaration that says so and that it sticks and it can be enforced. What about the case that Judge Hall relied on to dismiss the statute? Well, that, as I said before, Your Honor, that assumes that the statute that's being relied on is valid. We're attacking the statute. You can't say just because a contract says you have to comply with laws that anything that gets passed you must comply with, even if it's totally unconstitutional. Did you plead an estoppel count or not? I don't think we did. You know, you lose a little credibility when you argue something that you didn't even plead. I just want you to know that. Well, your brief suggests that you've pled this equitable estoppel argument against the village, and now you're telling us you didn't plead it? I mean, you know, it really does take away from your credibility when it wasn't pled. Well, we've pled all kinds of things. We've pled a breach of contract. We don't necessarily have to plead. Here's another one for you. Did you raise the issue of whether new meant the establishment or not? Is this something you're presenting for the first time? No. Did Judge Hall get that argument? Did you present it to Judge Hall? Yes. Or is this something you waived? Yes. No, we didn't waive that argument. We made that argument. She didn't rule on it. I can't control what the judge chooses to rule on. All right. I'm just asking because counsel has suggested, and I do think she's correct when she states that the first time that it's mentioned is in the reply brief. And, you know, arguments raised in the opening brief cannot be raised for the first time in reply. It's Supreme Court Rule 341. I know you're aware of it. I know that, Judge. Our argument in the reply brief was based on our response to what Bedford Park argued. All right. Anything further you wish to add? No, Your Honor. All right. The case was well argued, well briefed. We will take it under advisement and issue a ruling at some point in the future. Thank you.